United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GORDON GRAVELLE, an individual, | No. C 08-04653 MHP |
| Plaintiff, | |
| v. | **MEMORANDUM & ORDER** |
| HEALTH NET LIFE INSURANCE COMPANY, a California corporation, and DOES 1-100 inclusive, | **Re: Defendant's Motion to Dismiss** |
| Defendants. / | |

Plaintiff Gordon Gravelle brings this Employee Retirement Income Security Act (ERISA) action, alleging that defendant Health Net Life Insurance Company ("Health Net") failed to provide health insurance benefits and to communicate with Gravelle. Specifically, Gravelle asserts claims for (1) recovery of plan benefits, (2) incomplete written explanation of denial of benefits, (3) failure to comply with requests for written information, (4) state law breach of contract, (5) equitable estoppel, and (6) breach of contract implied in law.[1]  Health Net moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Having considered the parties' arguments and for the reasons stated below, the court enters the following memorandum and order.

BACKGROUND

I.    Parties

Plaintiff Gravelle is an individual residing in Antioch, California.  First Amended Complaint (FAC) ¶ 5.  Defendant Health Net is a corporation organized under the laws of the State of

California. Id. ¶ 4. At all relevant times, plaintiff was a named insured under a written group health insurance policy issued by defendant. Id. ¶ 11. The policy was a Health Net preferred provider organization ("PPO") policy. Id.

II.     Plaintiff's Medical Procedure and Associated Costs

In 2007, defendant's physician, Dr. Timothy Bray, submitted a request for pre-certification to defendant. On September 4, 2007, defendant responded by letter to Gravelle approving the requested inpatient service of "total knee arthroplasty." FAC, Exh. B. The letter stated, in relevant part, "This notice is to inform you that coverage for the requested inpatient service has been approved." It also stated:

> Prior authorization/precertification requests are reviewed for medical necessity and plan benefits. Approved authorizations/precertifications are not a guarantee of benefits or payment at a particular level of benefit. For a service to be covered, the member must be enrolled and eligible at the time the service is provided. Following receipt of a claim, payment determination is made based on member eligibility, third party liability, benefit maximums, coordination with other payers, deductibles, copayments and other applicable provisions and exclusions of the plan in place at the time of service.

Id. The letter included a telephone number to call "[s]hould you have questions or require additional information." Id. Plaintiff's counsel admitted at oral argument that plaintiff did not call Health Net with any questions before the surgery.

On or about October 9, 2007, Bray performed the approved medical procedure on plaintiff at Saint Mary Regional Medical Center. FAC ¶ 16. Saint Mary is located in Reno, Nevada. See id., Exh. C (invoice); Docket No. 24 (Def.'s RJN). Approximately three months after the surgery, defendant informed plaintiff that it would pay only $1,075 of the $80,912.65 total charge. FAC ¶ 17. Defendant also wrote to Saint Mary, on January 8, 2008, in response to an inquiry. See id., Exh. C (letter from Health Net adjustment unit). Defendant's letter stated:

> The claim has been adjudicated based on Health Net's application of the reasonable and customary value for the service charged. Health Net does not have a PPO contract for Saint Mary Regional Medical. This Elective admit for date of service 10/07/07 to 10/13/07 for bill charge $80,912.36 was processed at Tier-3 plan limit of $600 per day for 4 days equal [sic] $2400 and for Tier-3 there is a 50% co-pay.

Id.

2

In previous transactions with defendant, plaintiff had obtained pre-certification and was not required to pay out-of-pocket expenses. Id. ¶ 14.[2] Plaintiff was surprised that defendant paid a mere one percent or so of the total bill; plaintiff thereafter obtained the advice of counsel. Plaintiff informed defendant that he was represented by counsel on March 13, 2008. Id., Exh. E. On three separate occasions, in February, March, and May of 2008, plaintiff's counsel wrote to defendant, demanding that it reconsider its coverage decision. See id. ¶ 19, Exh. C (Feb. 12, 2008, letter), Exh. D (Mar. 11, 2008, letter), Exh. F (May 12, 2008, letter). Defendant did not reply to plaintiff's counsel until June 2008. See id., Exh. G (letter from Health Net). On June 9, 2008, defendant informed plaintiff's counsel that defendant had sent a copy of the "Certificate of Insurance" to plaintiff's home address on June 4, 2008. See id.

III.  The Certificate of Insurance

Plaintiff filed a document called "Certificate of Insurance: A complete explanation of your plan." See FAC, Exh. A (incorporated by reference into the operative complaint, see id. ¶ 11). This eighty-five page document provides an introduction to the Health Net PPO, a schedule of benefits, and information about eligibility, enrollment, termination, plan benefits, general limitations and exclusions, various general and specific provisions, and privacy practices. The first page of text begins as follows:

> **HEALTH NET LIFE INSURANCE COMPANY** (herein called HNL) agrees to provide benefits as described in this *Certificate* to You and Your eligible Dependents, subject to the terms and conditions of the Health Net PPO Insurance Policy (the Policy) which is incorporated herein and issued to the Group.
> **PLEASE READ THE FOLLOWING INFORMATION TO KNOW FROM WHOM OR WHICH GROUP OF PROVIDERS HEALTH CARE MAY BE OBTAINED.**
> **Preferred Providers** are providers who have agreed to participate in HNL's Preferred Provider Organization program . . . .
> **Out-of-Network Providers** have not agreed to participate in the Health Net PPO program. **WHEN YOU USE AN OUT-OF-NETWORK PROVIDER, BENEFITS ARE SUBSTANTIALLY REDUCED AND YOU WILL INCUR A SIGNIFICANTLY HIGHER OUT-OF-POCKET EXPENSE**. . . .
> **To maximize the benefits received under this Health Net PPO insurance plan, You must used Preferred Providers**. . . .

3

FAC, Exh. A at 5 (emphases in original). Other sections of the document reiterate the difference between Preferred and Out-of-Network providers. See id. at 30 ("How Covered Expenses are Determined" section) & 50 ("HNL Limited Fee Schedule for Out-of-Network Providers" section).

      The Certificate also describes the policyholder's coinsurance obligation and explains that the policyholder will be responsible for amounts exceeding the covered expenses. Id. at 9. The schedule of benefits specifies the coinsurance, i.e., the percentage of costs for which a policyholder is responsible, for various types of medical expenses. Under the heading of "Authorized Hospital and Skilled Nursing Facility Services," the schedule indicates 10% policyholder responsibility for Preferred Providers and 50% policyholder responsibility for Out-of-Network providers, for "Unlimited days of care in a semi-private room or Special Care Unit including ancillary (additional) services (excluding non-Severe Mental Disorders and Chemical Dependency)." Id. The "maximum amount allowable by HNL per day" is indicated as "No Maximum" for Preferred Providers and "$600" for Out-of-Network providers. Id. at 10.

      The Certificate describes when and how a policyholder must obtain advance certification for a procedure to obtain full coverage. Id. at 31-34. It states, in relevant part, "Certification is NOT a determination of benefits. Some of these services or supplies may not be covered under Your Plan. Even if a service or supply is certified, eligibility rules and benefit limitations will still apply." Id. at 31 (original printed in bold lettering). The Certificate also explains the following: "Effect on Benefits: If Certification is obtained and services are rendered within the scope of the Certification, benefits for Covered Expenses will be provided in accordance with the 'Medical Benefits' subsection of this *Certificate*." Id. at 33. The "Medical Benefits" subsection describes the types of benefits covered, and it urges the policyholder to read the "Schedule of Benefits" section, described above, to understand the policyholder's out-of-pocket expenses. Id. at 34.

      The Certificate's table of contents provides conspicuous headings for the sections pertaining to "Schedule of Benefits," "How Covered Expenses Are Determined," "HNL Limited Fee Schedule for Out-of-Network Providers," and "Certification Requirement." See id. at 3.

      The Certificate provides that California law will be used to interpret its provisions. Id. at 72.

4

IV.     Procedural History

Plaintiff brought suit in the Superior Court for the State of California, County of Contra Costa, on September 3, 2008, advancing claims under the California Business and Professions Code, section 17500, and other state law provisions. Defendant removed the case to this court on October 8, 2008. Plaintiff filed an amended complaint on November 13, 2008, advancing claims on the basis of ERISA. Defendant filed its motion to dismiss on December 3, 2008, and oral argument was heard on January 12, 2009.

LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Because Rule 12(b)(6) focuses on the "sufficiency" of a claim rather than the claim's substantive merits, "a court may [typically] look only at the face of the complaint to decide a motion to dismiss." Van Buskirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002). Although the court is generally confined to consideration of the allegations in the pleadings, when the complaint is accompanied by attached documents, such documents are deemed part of the complaint and may be considered in evaluating the merits of a Rule 12(b)(6) motion. Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).

A motion to dismiss should be granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, ___ U.S. ___, ___, 127 S.Ct. 1955, 1974 (2007). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). The court need not, however, accept as true allegations that are conclusory, legal conclusions, unwarranted deductions of fact, or unreasonable inferences. See

Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.2001); Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994).

DISCUSSION

Plaintiff identifies three distinct types of alleged wrongdoing by defendant. First, plaintiff argues that defendant somehow led him to believe that receipt of the September 24, 2007, pre-certification letter meant that defendant would pay for all, or at any rate more than one percent, of the costs associated with the surgery. Second, plaintiff argues that defendant failed to provide him with a complete written explanation for its benefits decision. Third, plaintiff contends that defendant ignored his counsel's request for information, thus running afoul of ERISA's requirement that a plan administrator comply with such requests.

I.   Claims Relating to the Pre-Certification Letter

Four of the claims plaintiff purports to state hinge upon the alleged ambiguity of the pre-certification process: recovery of plan benefits under 29 U.S.C., section 1132(a)(1)(B) (first claim in FAC); breach of contract (fourth claim); equitable estoppel (fifth claim); and breach of contract implied in law under 29 U.S.C. 1132(a)(3) (sixth claim). Defendant raises numerous arguments against these claims.

   A.   ERISA Preemption

Defendant contends that ERISA preempts the state law claims. ERISA supersedes a state law insofar as the law "relates to employee benefit plans," with certain exceptions such as laws that "regulate insurance." See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 45 (1987), overruled in part on other grounds by Ky. Ass'n of Health Plans, Inc. v. Miller, 538 U.S. 329, 341-342 (2003); 29 U.S.C. § 1144(a) & (b). Plaintiff has not argued that the general common law causes of action it advances find their basis in laws which "regulate insurance" or meet any of the other exceptions enumerated in section 1144(b). ERISA clearly preempts (1) the state law breach of contract claim,

6

and (2) the equitable estoppel claim insofar as it relies upon state law.  These specific claims must be dismissed on this basis.

B.       Federal Equitable Estoppel

Insofar as the equitable estoppel claim is based upon federal law, it too must be dismissed. To recover benefits under an equitable estoppel theory, an ERISA beneficiary must establish (1) a material misrepresentation, (2) reasonable and detrimental reliance upon the representation, and (3) extraordinary circumstances.  Serpa v. SBC Telecommunications, Inc., 318 F. Supp. 2d 865, 874 (N.D. Cal. 2004) (Patel, J.), citing Pisciotta v. Teledyne Industries, Inc., 91 F.3d 1326, 1331 (9th Cir. 1996).  Even if a plaintiff establishes the initial three pleading requirements for equitable estoppel, the Ninth Circuit has held that relief is available only where (1) the provisions of the plan at issue are ambiguous such that reasonable persons could disagree as to their meaning or effect, and (2) representations were made to the employee involving an oral interpretation of the plan.  Serpa at 874, citing Pisciotta at 1331 (combining three basic requirements for equitable estoppel claim under ERISA with additional requirements set forth in Greany v. Western Farm Bureau Life Ins. Co., 973 F.2d 812, 821 (9th Cir. 1992)).[3]  Arguably, plaintiff does not meet any of these requirements.  In any event, plaintiff does not plead any material representation or oral interpretation of the plan.  To the extent that plaintiff detrimentally relied upon anything, it was the mere receipt of the pre-certification letter, coupled with his earlier experience.  No action for federal equitable estoppel lies.

C.       Breach of Contract Implied in Law

Plaintiff alleges that defendant has been "unjustly enriched" by its "deceptive practices," see FAC ¶ 64, and that a claim therefore lies pursuant to 29 U.S.C., section 1132(a)(3) (authorizing appropriate equitable relief in ERISA cases).  Defendant contends that only equitable restitution is available under section 1132(a)(3) and that plaintiff seeks normal damages, not restitution, i.e., the return of property or specific, identifiable funds.  Plaintiff chose not to respond to defendant's detailed argument on this issue and therefore conceded the point.  This claim must also be dismissed.

7

### D.     Unambiguous Terms of the Policy and Pre-Certification Letter

All of plaintiff's claims pertaining to the benefits decision rely upon the notion that either the policy or the pre-certification letter was ambiguous such that plaintiff was justified in expecting a larger benefits payment than that which he received. Plaintiff states through attorney argument that "At the time Plaintiff received the approval for the surgery by HEALTH NET, Plaintiff believed that by obtaining pre-approval of this specialized surgery, he was entitled to the full benefits under the plan." Opposition Brief (Opp.) at 4.[4] Plaintiff does not allege that defendant made any separate representations to him contradicting the policy's provisions, aside from the pre-certification letter itself. Plaintiff's first, fourth, fifth, and sixth claims, therefore, cannot survive dismissal unless the insurance policy or pre-certification letter was misleading or ambiguous.

The Ninth Circuit has noted, "Although an ERISA plan is a contract, ERISA does not contain a body of contract law to govern the interpretation and enforcement of employee benefit plans." Gilliam v. Nevada Power Co., 488 F.3d 1189, 1194 (9th Cir. 2007) (internal citations and quotations omitted). Courts therefore normally "apply contract principles derived from state law . . . guided by the policies expressed in ERISA and other federal labor laws." Id. These principles comprise a "nationally uniform federal common law" applied in the ERISA context. See Saltarelli v. Bob Bake Group Med. Trust, 35 F.3d 382, 386 (1994). In this case, the policy at issue specifies that California law will apply to the interpretation of its provisions. See Exh. A at 72.[5] Other issues are governed by the nationally uniform federal common law of ERISA.

In determining whether language is ambiguous, the court interprets terms in an ERISA insurance policy "in an ordinary and popular sense as would a person of average intelligence and experience." Babikian v. Paul Revere Life Ins. Co., 63 F.3d 837, 840 (9th Cir. 1995) (holding that plaintiff had no reasonable expectation that benefits would vest where contrary language was clear, plain, and conspicuous). The court "will not artificially create ambiguity where none exists. If a reasonable interpretation favors the insurer and any other interpretation would be strained, no compulsion exists to torture or twist the language of the policy." Id., quoting Evans v. Safeco Life Ins. Co., 916 F.2d 1437, 1441 (9th Cir. 1990).

8

1  Defendant argues that, as a matter of law, these documents are unambiguous and that if
2 plaintiff had simply read the policy information—indeed, if he had even glanced at the first
3 page—he would have known that the use of an Out-of-Network provider would result in
4 "substantially reduced" benefits.  Moreover, defendant contends, the pre-certification letter and the
5 Certificate of Insurance both specifically state that pre-certification does not guarantee any particular
6 level of benefits, which must be determined based upon the policy provisions.

7  Defendant is correct.  Plaintiff has provided no coherent explanation of what provisions of
8 the policy were ambiguous and has offered no alternative interpretations.  On its face, the document
9 that describes the policy's benefits and limitations, the Certificate of Insurance, clearly and
10 repeatedly advises that choosing an Out-of-Network provider will result in substantially lower
11 benefits.  It also clearly states that the daily maximum allowable for Out-of-Network hospital stays
12 is $600 per day, and explains that this item includes "ancillary (additional) services."

13  The facts of the instant case parallel those of Van Ness v. Blue Cross of California, 87 Cal.
14 App. 4th 364 (2001).  In Van Ness, an insured brought suit under California law against an insurer
15 who paid a reduced benefit amount because the insured used on Out-of-Network provider, per the
16 policy's provisions.  Id. at 367-71.  Ignoring the plain language of the policy, the plaintiff allegedly
17 believed "Blue Cross would pay 70 percent and I would pay the rest," based upon a prior experience
18 involving his wife.  Id. at 370.  The court noted that exclusions governing coverage must be
19 "conspicuous, plain, and clear."  Id. at 373, citing Ponder v. Blue Cross of Southern California, 145
20 Cal. App. 3d 709, 719 (1983).  It found, however, that the procedure at issue was not subject to an
21 exclusion, because the procedure was in fact covered, albeit at a lower rate when performed by an
22 Out-of-Network provider.  Van Ness at 374.  Since the differential between preferred and out-of-
23 network providers did not constitute an exclusion, the defendant did not need to meet the Ponder
24 test.  In any event, the policy "clearly and explicitly" informed the policyholder of the differential,
25 and the court of appeal affirmed the trial court's dismissal of the complaint.  Id. at 375 & 377.

9

1    The federal common law for exclusions as articulated by the Ninth Circuit is
2 indistinguishable from the Ponder standard. Adopting the "reasonable expectations doctrine" here
3 relied upon by plaintiff, the Ninth Circuit explained:

> [A]n insurer wishing to avoid liability on a policy purporting to give general or comprehensive coverage must make exclusionary clauses conspicuous, plain, and clear, placing them in such a fashion as to make obvious their relationship to other policy terms, and must bring such provisions to the attention of the insured.

Saltarelli, 35 F.3d at 386, quoting National Mutual Ins. Co. v. McMahon & Sons, Inc., 356 S.E.2d 488, 496 (W.Va. 1987). The Satarelli court found the pre-existing condition exclusion at issue in that case, which appeared only in the midst of the "definitions" section of the plan summary, to be unenforceable, because it was not clear, plain, and conspicuous enough to negate the plaintiff's reasonable expectation of coverage. Saltarelli at 385 & 387.[6]

Like Van Ness and unlike Saltarelli, the case at bar deals not with policy exclusions but with the differential between in-network and out-of-network providers—a more basic and obvious structural component of the plan. Nevertheless, even under the "conspicuous, plain, and clear" test used in the context of policy exclusions, defendant would prevail as a matter of law. An insured has a duty to read his policy and will be bound by its provisions if he accepts it without objection. See Hadland v. NN Investors Life Ins. Co., 24 Cal. App. 4th 1578, 1586 (1994), citing Aetna Casualty & Surety Co. v. Richmond, 76 Cal. App. 3d 645, 652 (1977); see also Dalton v. LeBlanc, 350 F.2d 95, 97 (10th Cir. 1965); New York Life Ins. Co. v. McMaster, 87 F. 63, 66-67 (8th Cir. 1898). The insured is "bound by clear and conspicuous provisions in the policy even if evidence suggests that the insured did not read or understand them." Hadland at 1585, quoting Malcom v. Farmers New World Life Ins. Co., 4 Cal. App. 4th 296, 304 n.6 (1992). There are situations in which a policyholder may not be bound by policy provisions he has not actually read, but this is not such a case. See, e.g., Young v. Metropolitan Life Ins. Co., 272 Cal. App. 2d 453 (1969) (ordering full payment of benefits where insurer did not bring limited liability provision of conditional receipt to insured's attention).

Plaintiff does not allege that he was never provided with the certificate at issue. Like the Van Ness plaintiff, Gravelle relied upon his perceptions from "previous transactions" with the

10

insurance company, rather than the unambiguous provisions of the written insurance policy. Yet he does not allege that the previous transactions involved an Out-of-Network provider or were in any other way comparable to plaintiff's October 2007 procedure.

The written policy provisions are clear and conspicuous, as a matter of law, to a person of average intelligence and experience. Plaintiff did not read the provisions of his policy and relied instead on impressions from an earlier procedure. Taking plaintiff's allegations of material fact as true and construing them in a light most favorable to him, he does not state a claim for which relief can be granted.[7] The first, fourth, fifth, and sixth claims must be dismissed.

II.     Incomplete Written Explanation of Denial of Benefits

Plaintiff also alleges that defendant violated ERISA by failing to provide adequate written notice and explanation of the denial of benefits. The relevant ERISA provision states:

> In accordance with regulations of the Secretary, every employee benefit plan shall (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and (2) afford a reasonable opportunity to any participant whose claims for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133. The relevant portions of the regulation implementing this statutory provision require that a plan administrator[8] set forth:

> (i) The specific reason or reasons for the adverse determination;
>
> (ii) Reference to the specific plan provisions on which the determination is based;
>
> (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;
>
> (iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review;
>
> (v) In the case of an adverse benefit determination by a group health plan or a plan providing disability benefits . . . [i]f an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the

> adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request . . . .

29 C.F.R. § 2560.503-1(g)(1). "Substantial compliance" by defendant with these provisions is sufficient. Schneider v. Sentry Group Long Term Disability Plan, 422 F.3d 621, 627 (7th Cir. 2005); Hickman v. GEM Ins. Co., 299 F.3d 1208, 1215 (10th Cir. 2002). As plaintiff notes, the question can be phrased as: "[W]as the beneficiary supplied with a statement of reasons that, under the circumstances of the case, permitted a sufficiently clear understanding of the administrator's position to permit effective review?" Schneider at 628.

Plaintiff asserts that defendant has not provided notice setting forth the reasons for its decision adequate to permit effective review of the decision. Apparently referring to the January 8, 2008, letter from defendant to Saint Mary, the complaint alleges that the "letter(s)" failed to do several things, including explain why the claim was processed at the "Tier-3 plan limit" and provide whatever internal guidelines or factual reasons underlie the decision. See FAC ¶ 34.[9] Plaintiff separately alleges that defendant refused to provide a copy of the policy. Id. ¶ 35.

Defendant counters that section 1133 does not apply to its letter to Saint Mary, because that section, on its face, prescribes only the form of notice provided to "any participant or beneficiary." See 29 U.S.C. § 1133. Saint Mary is neither a participant nor beneficiary, but rather a provider of medical services. Plaintiff states in his moving papers that he was listed as a recipient of the letter. He asserts without citation to authority that if a policyholder is listed as a recipient, such a letter must meet the requirements of section 1133, even if the letter was directed to a provider. Whatever the merits of this legal position, it finds no support in the facts alleged. The exhibit plaintiff filed is addressed to Saint Mary and has neither a "cc:" line for plaintiff nor any other indication that defendant intended plaintiff to be a recipient. See FAC, Exh. C (letter from Health Net adjustment unit). Thus, there is no evidence or allegation that the letter was a notice to plaintiff, rather than Saint Mary, and section 1133's requirements do not apply to that letter.

Plaintiff has also alleged that defendant's failure to provide a copy of the policy has resulted in plaintiff's inability to gain "an adequate knowledge of the specific reasons why his claim for benefits was substantially denied in part." Id. ¶ 35. Assuming that the decision here constitutes a

12

"denial" for the purposes of the statute (an issue upon which the court reserves judgment), it is noteworthy that plaintiff filed, with his amended complaint, the Certificate of Insurance, which fully explains the limitations and calculations of the benefit he was paid. Plaintiff cannot in good faith allege that he does not understand why he was not reimbursed for the full amount of his expenses.

Of course, merely sending a copy of the Certificate would not absolve defendant of its responsibility to adequately notify plaintiff of the grounds for the particular benefits decision in question. A plan must, among other things, point the policyholder to the specific controlling policy provision and explain why it applies. If in fact defendant failed to provide adequate notice to plaintiff as to the reason for the decision, then plaintiff might be able to state a claim under section 1133. However, the operative complaint contains no specific allegation concerning the nature of defendant's notification of its decision.[10] The section 1133 claim must be dismissed.

III.   Failure to Comply With Requests for Written Information

Plaintiff also purports to state a claim under 29 U.S.C., section 1132(c)(1). That provision states in relevant part:

> Any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper.

Specifically, plaintiff asserts that he requested a copy of the "policy" and has been ignored by defendant.[11] Counsel for defendant stated at oral argument that defendant has sent only the Certificate of Insurance to plaintiff because that document, whatever it is called, is in fact the contract between defendant and plaintiff and contains the policy's provisions and limitations.

Plaintiff has made allegations that would likely allow it to at least state a claim under section 1132(c)(1) except for the fact that plaintiff omits any allegation pertaining to a key element of the statutory language, namely whether defendant is the administrator of plaintiff's plan. Only an entity

13

designated by the statute as an administrator can be held liable for failure to provide plan documents. See Moran v. Aetna Life Ins. Co., 872 F.2d 296, 299-300 (9th Cir. 1989) (finding no liability against insurance company who failed to turn over documents, when employer, not insurance company, was plan administrator).  Plaintiff suggests that he can simply amend his complaint to include the specific phrase "plan administrator," if this is required.  Opp. at 8-9.  It is important to note, however, that an insurance company that pays benefits under a plan is not necessarily the administrator.  ERISA defines an administrator as "the person specifically so designated by the terms of the instrument under which the plan is operated" or "if an administrator is not so designated, the plan sponsor" or, if neither can be identified, such other person as may be described in the applicable regulations.  29 U.S.C. § 1002(16)(A).  The "plan sponsor" is "the employer in the case of an employee benefit plan established or maintained by a single employer."  Id. § 1002(16)(B)(i).

Amending is not merely a matter of inserting the "specific phrase," as plaintiff suggests.  The filing of any amended complaint is subject to the requirements of Federal Rule of Civil Procedure 11.  The operative complaint does not state a claim and will be dismissed.

CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is GRANTED WITHOUT PREJUDICE.

IT IS SO ORDERED.

Dated: 1/23/2009

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

**ENDNOTES**

1. The operative complaint also purports to state a cause of action for an award of attorneys' fees and costs pursuant to 29 U.S.C., section 1132(g)(1). Although that provision authorizes the recovery of attorney's fees in ERISA actions, such a request does not constitute a cause of action. See Cerasoli v. Xomed, Inc., 972 F. Supp. 175, 183 (W.D.N.Y. 1997).

2. Plaintiff does not dispute the representation that Saint Mary did not have a PPO contract with defendant.

3. Reliance by plaintiff upon Davidian v. So. Calif. Meat Cutters Union & Food Employees Benefit Fund, 859 F.2d 134 (9th Cir. 1988), is misplaced. Davidian affirmed the district court's *denial* of recovery on an equitable estoppel theory. Id. at 137.

4. Plaintiff does not elaborate on the significance, if any, of his view that this involved a "specialized surgery."

5. There is no dispute as to the validity or applicability of the choice of law provision.

6. The plan summary at issue in Saltarelli contained no relevant heading that would have alerted the policyholder to the presence of a pre-existing condition exclusion. The only reference was in the "definitions" section, and even so, a policyholder would have had to engage in a coordinated reading of three separate definitions to understand the provision. Saltarelli, 35 F.3d at 385.

7. Even if plaintiff could state a claim under section 1133 or section 1132(c)(1) alleging a failure to communicate, such failure would not provide an independent basis to recover plan benefits under section 1132(a)(1)(B). See Hickman, 299 F.3d at 1215 (holding that an insurer's failure to meet the notice requirements of section 1133 does not necessarily entitle a claimant to benefits).

8. Defendant notes, in defending against plaintiff's section 1132(c)(1) claim, plaintiff's failure to plead that defendant is the plan administrator; however, defendant does not raise the same issue in relation to the section 1133 claim, despite the clear references to the "plan" and "the plan administrator" in section 1133 and its implementing regulations.

9. Plaintiff has made much, both in his papers and at oral argument, of the references to "Tier-3." Obviously, "Tier-3" refers to a certain level of benefits accompanying the particular plan covering plaintiff. The specific references appear in defendant's letter to Saint Mary and refer to the "Tier-3 plan limit of $600 per day" and the fifty percent co-pay "for Tier-3." FAC, Exh. C. As noted, the Certificate of Insurance plainly sets forth the $600 per day limit and fifty percent co-pay for inpatient care by an Out-of-Network provider. See id., Exh. A at 8-9. The "Tier-3" references in the letter to Saint Mary do not in any way obscure the reasoning underlying defendant's decision.

10. Plaintiff alleges that defendant informed him it would pay $1,075 of the charges "[a]pproximately three (3) months after [plaintiff underwent] the pre-approved medical treatment." FAC ¶ 17. Since plaintiff's surgery was on October 9, 2007, see id. ¶ 16, such notification would have been received in or about January 2008. Plaintiff alleges that he received no response to his counsel's February and March 2007 letters, see id. ¶ 19, but plaintiff makes no allegation about the nature or adequacy of the initial letter informing him of the decision. Plaintiff did not attach this letter to his complaint. An insurer who failed to inform an insured of its decision (or did so in a way not meeting the adequacy requirements of section 1133) could be liable under section 1133, but it is impossible to determine from this complaint if such is being alleged.

1  11. Plaintiff acknowledges that defendant sent a copy of the Certificate but complains that defendant sent it directly to plaintiff "in direct contravention to his request that all communication go through his counsel." Opp. at 7; see also FAC ¶¶ 42 & 44.  Yet the letter that plaintiff cites, at FAC, Exh. E, states, "Please be advised that I have retained [attorneys].  If you have any questions, please feel free to contact me.  Otherwise, you are hereby authorized to communicate directly to my attorneys."  This is hardly a request that all communication go through counsel.

**United States District Court**
For the Northern District of California